JOHNSON, Judge.
The plaintiffs are husband and wife. Mrs. Jumonville is claiming damages for personal injuries suffered on January 1, 1959, when she fell down the basement stairs in the home of Clarence Calogne, and Mr. Jumonville asks to recover medical expenses incurred as a result of the accident. The Civil District Court for the Parish of Orleans rendered judgment for plaintiffs and the defendants, Clarence Ca-logne and his public liability insurer, have appealed suspensively. Plaintiff, Mrs. Ju-monville, has answered the appeal, asking that the award to her be increased.
On the occasion of the accident, Mr. and Mrs. Jumonville, along with a few other friends, had been invited to the home of Clarence Calogne, the defendant, and they arrived about 10:00 o’clock a. m. A few minutes after the guests assembled, Mrs. Jumonville asked Mrs. Calogne for permission to use the bathroom. Mrs. Calogne reported that the bathroom was occupied at the moment. Within a very few minutes, while Mrs. Jumonville was in the area of the dining room, or living room, she does not remember which, Mrs. Calogne told her that the bathroom was available and motioned toward the hall which led from the dining room toward the back of the house. Mrs. Calogne led the way into the hall with Mrs. Jumonville following a few feet behind her. After passing out of the dining room into the hall, the first door to the right was closed. When Mrs. Jumon-ville reached that door, with Mrs. Calogne still walking down the hall a few feet ahead, Mrs. Jumonville opened that first door to the right and fell down the stairs which led to the basement. In the fall Mrs. Jumonville received serious personal injuries.
The Calogne home is described as a raised cottage with the ground floor serving as a so-called basement. Entrance to the main floor is made by steps to the front porch, the floor of which is rather high off the ground. A sketch of the floor plan of the main floor was made by Mr. Calogne while on the witness stand. Entrance to that floor is made from the front porch into the dining room. To the left is the living room. Entering the hall from the dining room the first door to the right leads to the basement. The first door to the left opens into the kitchen. A couple of feet beyond the basement door the hall widens .about two feet by an offset in the right hall wall. The bathroom door is located to the right around the corner of the right wall offset. At the end of the hall there are two doors, each leading to a bedroom. It was explained that upon arriving at the basement door going along the hall toward the back of the house, one can not see the bathroom door because the corner made by the offset of the right wall obscures the bathroom *432 door from view until one reaches the offset corner.
The testimony does not explain why Mrs. Calogne was walking ahead of Mrs. Jumon-ville, but it is reasonable to presume that her purpose was to guide Mrs. Jumonville to the bathroom. Mrs. Jumonville had never been in that home before that occasion. Mrs. Calogne did nothing to indicate that Mrs. Jumonville should enter the basement door. Mrs. Jumonville did not continue to follow Mrs. Calogne, who was just a few feet ahead with her back to Mrs. Jumon-ville. Mrs. Jumonville opened the basement door, which swung away from the hall, expecting to enter the bathroom on the same floor level. There was no platform and the first step to the basement right at the door was lower than the hall floor. Mrs. Jumonville said she did not see that the steps went down at the door, though it was 10:00 o’clock in the morning and there was no darkness. There was a bedroom in the basement which was occupied by members of the family.
Mrs. Jumonville accounts for her fall by saying that, (Tr. 15) :
“That, I had my right hand on the knob and it (the door) went in forward. I was walking forward to the door and the momentum of my body carried me right down the steps. * * *
“Q. Now, when you opened the door did you see that there were stairs there ?
“A. No; I didn’t see a thing. The momentum of my body took me right down the steps. I didn’t have a chance to see a thing.”
And on page 16 she said:
“I was walking forward to the door and as I opened the door I was still coming to walk into the bathroom and I just went right down.”
On cross-examination she was asked if it were not a fact that if she had looked she could have seen the steps going down. She first answered that she could not because the door was closed. The question was asked several times in different forms, but she appeared not to understand the question. She finally did understand and answered that if she had known it was a stairway she was sure she could have seen the steps.
On page 34 this question and answer appears :
“Q. There was nothing that prevented you from seeing the steps had you looked, was it?
“A. Well, I was opening the door and I was — I opened the door, the door pushed inward and the momentum of my body carried me down. I didn’t know — see the steps. I didn’t see anything.”
Mrs. Jumonville further said that there was nothing defective about the steps or stairs, insofar as she knew. Her counsel argues that there was no sign on the doors designating what rooms they led to and contends that the absence of such signs is negligence on the part of the home owner. He classifies the basement entrance without such a sign as a trap. We do not believe that it is expected or required that the doors along the hall in a private home of this type be labeled, as it is customary to do in public buildings.
 The trial Court held that the door situation constituted a dangerous hazard which was not visible. The Court said that under our law the owner of the building has a duty to warn his invited guests of any dangers in the building which are not obvious and that Mr. Calogne’s failure to do that in this instance was negligence. We have no doubt that the legal principle or doctrine thus enunciated is sound when applied to facts which disclose hidden dangers in the building. There was no danger in this case with the basement door closed. There was no hidden danger with the base *433 ment door open. The only danger here involved was the negligence of Mrs. Jumon-ville in walking through the open door without looking where her next step would be.
With all due respect for the learned trial Judge, we do not find any Louisiana reported decisions, and none has been pointed out to us, involving facts similar to those of this case that support the application of the legal principle he announced.
Counsel for plaintiffs relies in part on the Louisiana cases cited in his brief as authority for his argument that Mr. Calogne was guilty of actionable negligence either by failure to warn Mrs. Jumonville of the presence of the stairs beyond that door or by his failure to post a sign to indicate what was beyond the door. Those Louisiana cases cited by counsel for plaintiff are: Crittenden v. Fidelity & Casualty Co. of New York, La.App., 83 So.2d 538, and Alexander v. General Accident Fire & Life Assur. Corp., La.App., 98 So.2d 730. And counsel contends that the present case can be distinguished from those cited by counsel for defendant, which are Gosselin v. Stilwell, La.App., 78 So.2d 235; Briscoe v. Bailey, La.App., 74 So.2d 770, and Curet v. Hiern, La.App., 95 So.2d 699. The first case involves a claim by plaintiff Crittenden who went to the home to discuss with the homeowner a business matter. As he lowered himself into a chair on the porch, the chair slipped on the waxed concrete floor and plaintiff was injured. The Court held that there is no duty on the owner of the premises to insure an invitee against a possible accident, but the duty is to exercise reasonable care for his safety commensurate with the particular circumstances involved. Recovery was denied.
The Alexander case was an action for injuries sustained by plaintiff while a house guest when she slipped and fell 'on a rug which ran the entire length of the hall, but was not quite wide enough to cover the full width of the hall. Recovery was denied by the First Circuit Court of Appeal in a decision in which Judge Tate was the organ of the Court. Judge Tate, in his usual, exceptionally thorough and learned manner, discussed every point pertinent to such facts, harking back to the 19th Century English concepts of tort liability in such circumstances, and winding up with a quotation from the Crittenden, supra, case which, in short, says that the host is not liable for an injury to an invitee resulting from that which was obvious or should have been observed by the invitee in the exercise of reasonable care. The plaintiff was held to have been guilty of negligence.
The Gosselin case was an action by an employee who fell on a stairway. The trial Court found for plaintiff. The opinion of this Court through Judge Janvier, is extremely complete and convincing in its explanation of all of the facts involved in that case and in its discussion of many cited authorities, in reversing the trial Court’s judgment. The conclusion reached in that case is that in a case of this kind the person who falls must point out the cause of the fall, and at the end of the decision it quotes from a Michigan case to the effect that where the mishap of falling down stairs was not imputed to concealed defects, it belongs to that class of accidents, which must be attributable to the carelessness of the plaintiff. In this case now before us, Mrs. Jumonville says her momentum carried her down the stairs when she opened the door. That unsatisfactory explanation leaves us no alternative than to believe her when she further said that she did not see the steps because she did not look for them and she did not look for them because she thought she was going into the bathroom, and to attribute the fall to her own carelessness and inattention.
The Briscoe action was brought by a visitor against the owner of a building for damages for personal injuries sustained in a fall down an unlighted stairway. As in our present suit, no claim was made in that case of any defect or vice in the stairway. Mrs. Briscoe was a visitor on the second floor of the building and she asked to use *434 the bathroom. She was directed to go along the porch to the last door which led into the bathroom. She went down the porch but opened the wrong door, which was not the last door, which opened into an unlighted hall.' The hall led to the stairs from the second to the first floor. She fell down the stairs. She was held to be guilty of negligence and recovery was denied.
The last case referred to above was a suit by Mrs. Curet against the owner of an apartment building, alleging that she fell down the stairway and suffered personal injuries and that the fall was due to defective design and construction of the building. Plaintiff’s daughter and son-in-law occupied one of the two apartments in the building. Plaintiff lived with them. However, she was somewhat unfamiliar with the layout because they moved into the apartment just four days prior to the accident. In that case the plaintiff was awakened in the night by a noise which sotmded like a door slamming downstairs. It was raining and the wind was blowing. She arose and intended to go downstairs to close the door. She opened an upstairs door in an attempt to step on what she thought was a landing when she fell down the stairs. The trial Court rendered judgment in favor of the plaintiff. Judge McBride wrote the opinion of this Court and cited, discussed and quoted from a number of pertinent authorities on the subject of the respective duties imposed on a property owner and his invitee. Judge McBride closes that discussion with a quotation from Knight v. Travelers Ins. Co., La.App., 32 So.2d 508. The Court reversed the judgment appealed from because of the negligence on the part of plaintiff.
These decisions referred to above involve facts not wholly unlike the circumstances here prevailing, and it is entirely unnecessary to extend this discussion further. We conclude that Mrs. Jumonville could have seen that the stairway was not the bathroom if she had taken time to make the slightest observation. We can not accept her version that the momentum of her body rendered her helpless and carried her down the steps so precipitously that she had no time to inform herself that she was not entering the bathroom. She should not have permitted her ■ emergent haste to cause her loss of equilibrium in her blind effort to reach her destination. Counsel for plaintiffs and counsel for defendants have cited in their briefs certain decisions from foreign jurisdictions. The results reached in the cases cited for defendants are completely contrary to the results in the cases cited for plaintiffs. In view of the pertinent Louisiana decisions cited above as well as any number of others reaching the same conclusion, with none to the contrary, and considering the facts of the case at bar, we conclude that there was no negligence or liability on the part of Mr. Calogne and that Mrs. Jumonville was guilty of negligence which caused her own personal injuries.
For these reasons, the judgment appealed from is reversed and plaintiffs’ suit dismissed, with costs in both courts.
Reversed.